**UNITED STATES, Appellee,**

v.

**Curtis L. CHERRY, Private, U.S. Army, Appellant.**

No. 51713.

CM 443912.

U.S. Court of Military Appeals.

Aug. 4, 1986.

For Appellant: *Captain Craig E. Teller* (argued); *Lieutenant Colonel William P. Heaston* and *Captain Harry L. Williams, Jr.* (on brief); *Colonel William G. Eckhardt* and *Captain Annamary Sullivan.*

For Appellee: *Captain Kathy J.M. Peluso* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Captain Robert L. Swann, Captain Laura G. Poston* (on brief); *Lieutenant Colonel*

*Larry D. Williams* and *Major Patrick M. Flachs.*

### Opinion of the Court

COX, Judge:

The accused was tried at Nellingen Barracks, Federal Republic of Germany, by a military judge sitting as a general court-martial. Contrary to his pleas, he was convicted of two specifications of involuntary manslaughter and two specifications of aggravated assault, in violation of Articles 119 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 919 and 928, respectively. His sentence to confinement for 15 months, total forfeitures, and a bad-conduct discharge was approved by the convening authority. The Court of Military Review affirmed in an unpublished opinion.

We granted review of the following issue:

WHETHER THE EVIDENCE IS SUFFICIENT AS A MATTER OF [FACT AND] LAW TO SUPPORT THE FINDINGS OF GUILTY AS TO INVOLUNTARY MANSLAUGHTER AND AGGRAVATED ASSAULT BY CULPABLE NEGLIGENCE BECAUSE APPELLANT'S CONDUCT DOES NOT CONSTITUTE CULPABLE NEGLIGENCE AND IS COMPLETELY EXCUSED BY OBEDIENCE TO APPARENTLY LAWFUL ORDERS.

We hold that the evidence was legally sufficient to support the accused's convictions and affirm. [The bracketed portion of the granted issue is not before us. Art. 67(d), UCMJ, 10 U.S.C. § 867(d).]

When his platoon deployed to the field for a training exercise on July 6, 1982, the accused was assigned to drive a 2½-ton truck. He was licensed to drive several military vehicles, including a 2½-ton truck. On the way to the field, the brakes appeared to the accused to be "working good." While in the field, the accused was told to conduct a Preventive Maintenance Checks and Services (PMCS) on the truck each day. He testified that he did not inspect the truck at all during this period, however, because he was too busy with other duties.

Before the platoon returned to the garrison 10 days later, the platoon leader and platoon sergeant checked all the vehicles.[1] The platoon leader, Second Lieutenant Cheryl Case, gave a safety briefing and instructed the drivers and passengers not to break convoy unless mechanical difficulty developed with a vehicle; in that event, the drivers were to pull to the side of the road, put out a warning triangle, and wait until someone came back to assist them.

When the platoon departed the field, the accused was driving the same truck. Accompanying him in the truck was Specialist Four Dave A. Vaughn, who was not licensed to drive a 2½-ton truck. Vaughn was senior occupant of the vehicle, as the accused was only a Private (E–1) at the time.[2]

An accident on the autobahn soon brought the convoy to a virtual standstill. When he pressed his foot to the brake to slow down, the accused realized for the first time that the brake was not functioning properly. Rather than pulling off to the side of the road, however, the accused exited the autobahn, yelling to the platoon sergeant, "My brakes don't work."

The accused testified that after exiting the autobahn he asked Vaughn if they should pull over. Vaughn purportedly replied, "Naw, go ahead."[3] The accused then stated, "My brakes ain't working that

---

1. The platoon sergeant found that the accused's truck had a faulty hand brake and an inoperative engine stop.

2. The accused had been in the Army 4 years, but had been reduced from the grade of E–3 as a result of punishments under Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815.

3. Vaughn did not testify at trial. It was stipulated, however, that if he were present in court Vaughn would testify that, due to head injuries suffered in the accident, he could not recall anything that happened after the truck exited the autobahn.

well, man." Vaughn placed his own feet on the brakes and opined, "Oh, it's just pressure, you got to keep pumping them." The foot brake was spongy and the accused noticed that it sank a little lower than the clutch pedal, which it had not done before. The accused testified that he did not think that Vaughn "really knew the brakes that well," but he nevertheless continued to drive the truck through a busy metropolitan area of Germany in compliance with Vaughn's orders to proceed. The accused put the emergency flashers on and drove five miles after exiting the autobahn, bypassing numerous places where he could have pulled over and stopped.

The accused stated that he told Vaughn, "I got to pull this truck over now." According to the accused, Vaughn's retort was, "Naw man, go on back, go on back. That's the way to Nellingen, go on back." As the truck began to descend a hill, the accused realized that the foot brake had failed completely. Frantic attempts by the accused and Vaughn to stop or slow the truck were to no avail. The truck gained speed as it headed downhill toward a crowded intersection.

Whereupon, Vaughn opened the passenger door and yelled, "You going to jump man, you going to jump?" Vaughn jumped out and the accused followed closely behind. The unmanned and out-of-control truck slammed into the rear of a car stopped for a traffic signal at the bottom of the hill. The impact pushed the car into a crosswalk, killing a pedestrian. One occupant of the car was killed and three others were injured.

■ The accused argues that his conduct in continuing to drive a heavy vehicle with defective brakes in a congested area should be excused, contending that Vaughn's "orders" to keep driving were not manifestly unlawful. We recognize that an order to perform a military duty is presumed lawful and a subordinate disobeys an order at his peril. Para. 216d, Manual for Courts-Martial, United States, 1969 (Revised edition); see Part IV, para. 14c(2)(a)(i), Manual for Courts-Martial,

United States, 1984. An order to keep driving under these facts, however, appears to be patently illegal. The platoon leader had ordered the accused and Vaughn to pull to the side of the road and stop if mechanical trouble developed. No military exigency or other necessity existed which would justify an E-4 to countermand the lawful order of a superior commissioned or noncommissioned officer. An act performed pursuant to an order which a person of "ordinary sense and understanding" would know under the circumstances to be unlawful is not excusable. *United States v. Calley*, 22 U.S.C.M.A. 534, 542, 48 C.M.R. 19, 27 (1973).

■ In any event, we are not convinced that Vaughn's comments were orders at all. Although the form in which an order is expressed is immaterial, an order must be "a 'positive command.'" *United States v. Mitchell*, 6 U.S.C.M.A. 579, 581, 20 C.M.R. 295, 297 (1955). *See United States v. Warren*, 13 M.J. 160, 161 (C.M.A. 1982).

The Government characterizes Vaughn's statements to the accused as nothing more than advice or suggestions. This comports with the military judge's finding of fact "that the accused did not take any statements from Vaughn as an order." Although the accused was an E-1 at the time, he was not new to the Army or inexperienced as a military truck driver. He had been an E-3, had 4 years of prior service, and was the only one in the vehicle with a military license and the ability to know the condition of the brake. Considering the conversation in context, we conclude that the military judge's finding of fact is not clearly erroneous and, thus, it will not be overturned on review. *United States v. Burris*, 21 M.J. 140 (C.M.A. 1985).

■ The accused also contends that his conduct did not constitute culpable negligence. We disagree. The record shows that the accused failed to inspect his assigned vehicle properly, failed to follow the safety instructions provided by the platoon leader when he realized the brake was defective, failed to pull over to the side of the

road after exiting the autobahn when he had numerous opportunities to do so, and continued to drive for five miles in a congested, hilly area knowing that the brake was defective. His actions reflect "a culpable disregard for the foreseeable consequences to others." *See* paras. 198*b* and 207*a*, Manual, 1969, *supra*. Although Vaughn may have been derelict in his duties as "vehicle commander" by encouraging the accused to continue driving, that does not relieve the accused of responsibility for his actions as driver of the truck. *Cf. United States v. Shelly*, 19 M.J. 325 (C.M.A. 1985) (evidence insufficient to show that senior occupant of vehicle had duty to control its operation).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge SULLIVAN did not participate.